## PARNELL v. STATE.

No. A-11631. Nov. 19, 1952.

(250 P. 2d 474.)

Cicero I. Murray, Lindsay, and Bowie & Bowie, Pauls Valley, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Neal Parnell, was jointly charged with one Howard Lee with the crime of transporting alcoholic liquor into the state of Oklahoma without a permit from the State Tax Commission. A severance was had, Parnell was tried, convicted and pursuant to the verdict of the jury was sentenced to serve three years imprisonment in the penitentiary and pay a fine of $1,000, and has appealed.

The case has been well briefed and many assignments of errors are presented. We shall consider them in the order in which they are presented in the brief of defendant.

It is first contended that there was no proof of the corpus .delicti.

The term "corpus delicti" means, when applied to any particular offense, the actual commission by someone of the particular offense charged. Gorum v. State, 60 Okla. Cr. 248, 63 P. 2d 765; Robinson v. State, 71 Okla. Cr. 75, 108 P. 2d 196.

It is also established law that the corpus delicti in a criminal case cannot be established by the confession of the defendant alone. Capshaw v. State, 69 Okla.

Cr. 440, 104 P. 2d 282; Davis v. State, 71 Okla. Cr. 82, 108 P. 2d 200; Osborn v. State, 86 Okla. Cr. 259, 194 P. 2d 176. The corpus delicti, however, may be established by direct or circumstantial evidence. Ramey v. State, 69 Okla. Cr. 257, 101 P. 2d 856. It is unnecessary in establishing the corpus delicti to prove that the defendant committed the crime, but the evidence either direct or circumstantial must show that a crime was committed.

In Osborn v. State, supra, this court held:

"In every criminal prosecution it devolves upon the state to prove, first, the corpus delicti; second, that the crime charged was committed by the accused.

"The 'corpus delicti' means, when applied to any particular offense, the actual commission by some one of the particular offense charged."

Although the exact question has never been before the Oklahoma courts for determination, it has been held in other jurisdictions that the corpus delicti may be established by the evidence of a co-conspirator. People v. Bonilla, 124 Cal. App. 212, 12 P. 2d 64.

This brings us to a consideration of the state's evidence. Howard Lee, the codefendant, testified that he lived in Longview, Texas; that on May 9, 1947, he was driving a Ford truck on the highway near the town of Lindsay in Garvin county; that he had several cases of whiskey and gin on the truck covered with hay; that he obtained the load of whiskey and gin at Shreveport, Louisiana; that the defendant Parnell had employed him to drive the truck and so far as he knew Parnell was the owner of the whiskey; that he obtained the whiskey in Louisiana the day before his arrest and that he hauled it directly from Louisiana to where he was arrested; that he had no permit from the State of Oklahoma for the transportation of liquor that was found in the truck. On cross-examination he testified that after his arrest he was charged in the county court of Garvin county with the illegal transportation of liquor but that at a hearing in the county court the case was dismissed on the ground that the liquor was an interstate shipment.

Claude Swinney testified that he was sheriff of Garvin county and arrested the defendant with 139 cases of whiskey and five cases of gin just west of the town of Lindsay; that Howard Lee was driving the truck and did not have a permit from the Tax Commission for the importation of such liquor into the State of Oklahoma; that at the time the truck was stopped it was traveling northwest toward Chickasha and was about 25 miles from Chickasha. The truck was traveling in the direction of the home of the defendant Parnell, who lived four or five miles from Chickasha; that he had a conversation after the seizure of whiskey with the defendant Parnell in which the defendant told him that the liquor belonged to the defendant. Later, after an order of the county court was served on him, he refused to deliver the liquor to the defendant Parnell upon the advice of the state's attorneys. Howard Lee had no bill of lading for the whiskey.

Robert Hood, deputy sheriff of Garvin county, testified to substantially the same evidence as related by sheriff Swinney.

Clarence McKinney testified that he was the jailer of Garvin county and as such helped stack the cartons of intoxicating liquor in the vault in the sheriff's office; that neither the cartons nor any of the containers of the liquor had a stamp on them and there was nothing on the outside to show the name and address of any purchaser or consignee.

The crime charged involves an alleged violation of the alcohol permit law. Title 37 O.S. 1941 §§ 41 to 48. Section 43 of such act provides:

"Any person, individual, firm, corporation, or association desiring to import, bring in, or transport intoxicating liquor, containing more than four (4%) per cent of alcohol by volume, shall first secure from the Tax Commission of the State of Oklahoma, a permit as herein provided. *Such permit shall accompany such intoxicating liquor at all times while being imported, brought into and transported into and in the State of Oklahoma*, shall be in possession of the person or carrier transporting the same and shall, upon demand, be exhibited to any peace officer or other duly constituted agent or representative of the State of Oklahoma, or such officer of the United States of America. When said intoxicating liquor shall have reached its destination, such permit shall be returned to the said Tax Commission and by it marked 'cancelled'. In any complaint, information, indictment or other proceeding laid or brought under this Act, it shall not be necessary to negative the issuance or possession of a permit, and the burden of establishing such issuance and possession shall be upon the person or party claiming the benefit thereof. Failure to produce and exhibit such a permit upon demand as provided in this Act, shall constitute prima facie evidence of the lack of such permit." (Italics ours.) Title 37 O.S. 1941 § 43.

In order to establish the corpus delicti of this offense, it was incumbent upon the state to show an importation or transportation of intoxicating liquor into the state. As pointed out by counsel for defendant, a transportation wholly within the state would not constitute a violation of this particular act, but there must be proof that the liquor was brought "into" the state from without the state.

The testimony of the coconspirator showed that the whiskey was loaded at the Brush Liquor Company in Shreveport, Louisiana and that he drove with it directly to the place where he was arrested in Garvin county; the liquor was tax-paid liquor. It was not manufactured in Oklahoma. There was no permit in the possession of the truck driver. Neither were the cartons in which the bottles of liquor were contained stamped with the name and address of any consignee as required by the federal laws pertaining to an interstate shipment. 18 U.S.C.A. § 390 [1948 Revised Criminal Code, 18 U.S.C.A. § 1263].

We think the testimony of the accomplice Lee, together with the circumstances detailed by the officers who made the arrest, were sufficient to show that some one had committed the crime of transporting intoxicating liquors from without the state into the State of Oklahoma wihout a permit from the State Tax Commission. The corpus delici having been established, then the confession made by the defendant to the officers that the liquor belonged to him was sufficient to sustain the conviction. Osborn v. State, supra; Gorum v. State, supra.

It is next contended that reversible error was committed when the court permitted the officer to testify to a statement made by the codefendant Howard Lee at the time of the arrest of Lee and the seizure of the liquor for the reason that such testimony was hearsay.

It is well settled that where a conspiracy is entered into to do an unlawful act, the conspirators are responsible for all that is said or done pursuant to the conspiracy by their coconspirators until the purpose has been fully accomplished. Burns v. State, 8 Okla. Cr. 554, 129 P. 657; Irvin v. State, 11 Okla. Cr. 301, 146 P. 453; Spivey v. State, 69 Okla. Cr. 397, 104 P. 2d 263; Burns v. State, 72 Okla. Cr. 432, 117 P. 2d 155; Waldrep v. State, 74 Okla. Cr. 438, 127 P. 2d 860.

Counsel for the accused concede that the above statement of the law is correct, but they contend that the statement by the witness Howard Lee to the officers after his arrest was a statement after the conspiracy had either been accomplished or had been abandoned and therefore the statement was inadmissible.

We think it may be said that as a general rule the arrest of coconspirators may be said to effectively preclude any further concerted action, and ordinarily

puts an end to the conspiracy; and accordingly any statement by a coconspirator out of the presence of his other coconspirators made after his arrest and confinement in jail would be hearsay and inadmissible. However, the prosecution has called our attention to the record which discloses that a few days subsequent to the arrest of Howard Lee and the seizure of the whiskey Lee procured an order of the county court dismissing a misdemeanor charge of transportation of intoxicating liquor filed against him in the county court and directing the sheriff to return the truck and intoxicating liquor seized by the sheriff to Howard Lee; and the state insists that this evidence showed that the conspiracy had not been abandoned with the arrest of Lee but that his testimony before the county court that the shipment was interstate shipment from Shreveport, Louisiana to Carlsbad, New Mexico, and the effort of Parnell to have the liquor returned to him, showed that the conspiracy was still in effect; and accordingly the statement by Lee to the officer that he was taking the whiskey to the town of Tabler, near Chickasha, was admissible against both of the co-conspirators even though not made in the presence of Neal Parnell. We have come to the conclusion that the contention of the state is correct and that the testimony to which objection was made pertained to the statement of an accomplice accomplishing an act in pursuance of a concerted criminal purpose and was made at a time when conspiracy was still in effect. The conspiracy in this instance was the criminal plan on the part of Parnell and Lee to transport the liquor from the wholesale liquor company in Louisiana into the state of Oklahoma for delivery near Chickasha to such place as Parnell might direct; and until this conspiracy was accomplished or abandoned the declarations of either Parnell or Lee in connection with the conspiracy would be admissibile against the other man even though made in the absence of the other conspirator.

In Burns v. State, supra, 8 Okla. Cr. 554, 129 P. 657, this court stated:

"The responsibility of co-conspirators for the language or conduct of those acting with them is not confined to the accomplishment of the common purpose for which the conspiracy was entered into, but extends to and includes all declarations made and collateral acts done incident to and growing out of the common design when spoken or done by a co-conspirator as against all of his co-conspirators."

It is next argued that the court erred in not instructing the jury as a matter of law that Howard Lee was an accomplice. In instruction No. 12 the court fully defined an accomplice and the necessity of corroborating evidence before a conviction could be sustained. No objection was made or exception taken to this instruction and there was no requested instruction by the defendant that the court instruct the jury as a matter of law that Lee was an accomplice. In view of this state of the record defendant cannot now complain of this alleged error.

Complaint is also made as to alleged erroneous statements of the Assistant Attorney General and the county attorney. The statement by the Assistant Attorney General was in reply to an inquiry of the court as to what bills of lading, identified as state's exhibits "A" and "B", showed, to which the Assistant Attorney General stated, "That is where these two bill of ladings were for, headed for Natchez, Mississippi." At the time of this statement the Assistant Attorney General was inquiring of the witness Lee as to whether he had his bill of lading and Lee had said that he thought he had one showing that he was taking the liquor to Carlsbad, New Mexico. Counsel for the state then identified two instruments as state's exhibits "A" and "B" and submitted them to the witness for examination, and the witness stated that it appeared to be his signature upon the exhibits. Counsel then inquired if he hauled any liquor to Natchez, Mississippi, to which counsel for the defendant interposed an objection. The inquiry by the court followed, to which the statement was made by

the Assistant Attorney General hereinabove quoted. No objection or exception was taken to the statement of the Assistant Attorney General. These two instruments were never offered in evidence. The Assistant Attorney General states in his brief that the statement made by him was made at the bench out of the presence of the jury, but the record does not so reflect. However, the able counsel who represented the accused did not attach much importance to the alleged misconduct of the Assistant Attorney General at the time it was made for the reason that no exception was taken to his statement. We think the statement was improper but do not consider that it had a material bearing on the outcome of the case and was not so fundamentally erroneous that this court can consider it in the absence of an objection and exception to such statement.

We have examined the argument of the county attorney to which complaint was made. Evidently, the county attorney was referring to a habeas corpus action filed in this court by Lee and Parnell testing the constitutionality of the law and further bringing into question the alleged repeal of the law by the 1947 Session of the Legislature. Ex parte Lee, 88 Okla. Cr. 386, 203 P. 2d 720. As shown above, the trial court sustained the objection of counsel and admonished the jury not to consider the remarks by the county attorney. Apparently, the county attorney was trying to explain to the jury the long delay in bringing the case up for trial after the arrest of the accused. If such argument was erroneous, we think it was fully cured by sustaining the objection of counsel for defendant and admonishing the jury not to consider it. We have examined the other alleged improper argument of the county attorney and find that it was not erroneous.

The next assignment of error is directed at the instructions given and those refused. Counsel contend that instruction No. 10 given by the court was erroneous. This instruction clearly stated the law with reference to the federal statute requiring that an interstate shipment of liquor should have labels on the outside of the packages of the liquor giving the names and addresses of the persons to whom the same are being shipped. This instruction was given by agreement of counsel for the state and counsel for the defendant in connection with a requested instruction of the defendant which was given. Of course, since it was given by agreement of counsel for both sides, no objection was taken to the instruction, and we do not think there was error in the giving of it. The defendant further requested the court to instruct the jury as follows:

"The defendant would not be guilty of the crime charged in the Information if he employed one Howard Lee to transport the liquor in question from the State of Louisiana to Carlsbad, New Mexico, and if without the knowledge or consent of the defendant, Lee brought the whiskey into the State of Oklahoma, therefore you are instructed that if you find from the evidence, or if you have a reasonable doubt thereof, that the defendant employed Howard Lee to transport said liquor from Louisiana to New Mexico, then before you can convict the defendant you must find beyond a reasonable doubt that said whiskey was brought into Oklahoma with the defendant's knowledge and consent."

The trial court is only obligated to give instructions pertaining to the issues before the jury. The defendant did not testify and offered no evidence that he had employed Lee to transport the liquor from Louisiana to Carlsbad, New Mexico, and that Lee violated the instructions given him by the defendant when he brought the liquor into Oklahoma. In the absence of any issue as to this question, the court acted properly in refusing to instruct along the line requested by counsel.

We have examined all of the instructions and feel that they were a substantial statement of the law.

We feel there is merit to the contention that the punishment is excessive. At the time the liquors were brought into the state of Oklahoma on May 9, 1947, many individuals were under the impression that the Alcohol Import Bill, as it was known, was repealed by an act of the legislature on April 24, 1947. In fact one of the able members of this court, the late Judge Barefoot, in a dissenting opinion filed in the case of Ex parte Lee, supra, in which these identical defendants were involved, held that at the time of the arrest of the defendants and seizure of the liquor there was no statute in Oklahoma providing a penalty for the importation of such liquor into the state.

Under all the facts and circumstances of this case, we are of the opinion that justice would be fully served by reducing the sentence pronounced against the accused from three years in the pentitentiary and a fine of $1,000 to one year in the penitentiary and a fine of $1,000, and the judgment and sentence as thus modified is affirmed.

BRETT, P. J., and POWELL, J., concur.